J-S35043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ANDREW EVAN HOWLAND | : | |
| Appellant | : | No. 432 MDA 2025 |

Appeal from the PCRA Order Entered March 4, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005410-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ANDREW EVAN HOWLAND | : | |
| Appellant | : | No. 433 MDA 2025 |

Appeal from the PCRA Order Entered March 4, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005421-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ANDREW EVAN HOWLAND | : | |
| Appellant | : | No. 434 MDA 2025 |

Appeal from the PCRA Order Entered March 4, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0002475-2021

BEFORE:  OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED DECEMBER 02, 2025**

Andrew Evan Howland ("Howland") appeals *pro se* from the orders dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously summarized the factual background of this matter:

> In the fall of 2020 Howland began communicating electronically with [J.C. ("the Victim")[2]] about sexual matters.  Howland was 38 years old and the [V]ictim was only 13 years old.  In one Snap Chat video Howland is seen telling the [V]ictim that he loves him.  The [V]ictim then sent a naked photo . . . to Howland.  Messages between Howland and [the Victim] revealed that Howland planned to pick up the [Victim] from the [Victim's] home.
>
> On December 2, 2020, Howland traveled from Lancaster County to the state of Indiana, picked up the [Victim] without the knowledge or permission of the [Victim's] parents, and brought [the Victim] back to Lancaster.  Police were able to identify Howland as the perpetrator based on his Snap Chat and Facebook accounts, and they were able to locate him at a hotel in Lancaster through a ping on his phone.  When police arrived at the hotel, they found the [V]ictim inside a room with Howland.  Howland claimed the [V]ictim was his child.  The [V]ictim was not wearing pants.  Unused condoms were found in the hotel room and Howland's car, while used condoms were found in a garbage bag in Howland's car.  Child pornography was found on Howland's phone.

***Howland***, 289 A.3d 58 (unpublished memorandum at 3) (citation and brackets omitted).

---

[1] ***See*** 42 Pa.C.S.A §§ 9541-9546.

[2] "The [V]ictim is transgender and identifies as male.  We will use male pronouns when referring to the [Victim]." ***Commonwealth v. Howland***, 289 A.3d 58 (Pa. Super. 2022) (unpublished memorandum at 2, n.1); ***see also*** N.T., 8/16/21, at 74; N.T., 8/17/21, at 190-91.

The Commonwealth charged Howland at three dockets with numerous offenses, including kidnapping of a minor to facilitate commission of a felony, statutory sexual assault, involuntary deviate sexual intercourse ("IDSI") with a person less than sixteen years of age, aggravated indecent assault of a person less than sixteen years of age, and possession of child pornography.[3] The trial court consolidated the three matters. Christopher Sarno, Esquire ("Trial Counsel"), represented Howland at his jury trial.

During opening statements, the prosecutor stated that the Commonwealth's DNA expert would testify that she tested swabs taken from the Victim, which showed Howland's "DNA inside the vagina of" the Victim. N.T., 8/16/21, at 58. The prosecutor further stated: "And at the end of the day, ladies and gentlemen, [Howland] was found inside a hotel room with a kidnapped 13-year-old child, **his DNA is inside that child's vagina**, and his DNA is on a mixture on a used condom with that child." **Id**. at 61-62 (emphasis added). We note Trial Counsel did not object to the prosecutor's representations regarding the DNA expert's testimony, request a mistrial, or reference the DNA evidence during his opening statement.

The Victim testified to the events described above, including his online communication with Howland and traveling to Pennsylvania with Howland without permission from his parents. **See** N.T., 8/17/21, at 191-202. The

---

[3] **See** 18 Pa.C.S.A. §§ 2901(a.1)(2), 3122.1(b), 3123(a)(7), 3125(a)(8), 6312(d).

Victim stated that, during their first night in a hotel, Howland performed oral sex, digitally penetrated, and had vaginal intercourse with the Victim. *See id*. at 202-03. The Victim testified that Howland used two condoms during vaginal intercourse. *See id*. at 203.

The nurse who performed the forensic medical examination testified to the following. The Victim indicated to the nurse that he had oral and vaginal sex with Howland, and Howland wore a condom during intercourse. *See* N.T., 8/17/21, at 317-18. The nurse took swabs from the Victim's mouth, vagina, and "external genitalia" for DNA testing and swabbed different portions of the vagina, including an area "closer to the labia," while the "external" genitalia swab went "from labia to inner thighs." *Id*. at 320-21; *see also id*. at 321 (nurse agreeing with prosecutor that the external genitalia swab was "if you're looking at the lips of a vagina, you do a [swab] outside of that").

The Commonwealth's DNA expert testified to the following. She performed an analysis of the four swabs taken from the Victim's vagina, which showed only the Victim's DNA. *Id*. at 351-52. However, the DNA from the sperm on the outside and inside of the condom matched Howland, while the non-sperm DNA on the outside of the condom matched the Victim. *Id*. at 353-56.

The DNA expert performed a "Y chromosome" analysis — which identifies only "male DNA" from a sample, since only males have a Y chromosome — on the non-sperm DNA from the external genitalia swabs taken from the Victim. *Id*. at 356-57. This analysis showed a match between

Howland and the Y chromosome DNA from the sample. *See id*. at 357. The expert concluded — with a confidence interval of to "approximately 1 in every 9,742 individuals" — that "neither . . . Howland nor any of his paternally related male relatives can be excluded as a contributor" of the DNA from the external genitalia swabs. *Id*.

Howland testified in his own defense. He largely acknowledged his communication with the Victim and transporting him to Pennsylvania. As this Court previously summarized:

> In his testimony, Howland admitted he knew the [V]ictim was only 13 years old and there would be potential legal ramifications for what he did, he admitted communicating with the [Victim] by Snap Chat and Facebook, admitted receiving images of the [Victim], admitted talking to him about sex and wanting to feel himself inside the [Victim], admitted driving to Indiana to pick up the [Victim], admitted he did not have permission from the parents, and admitted bringing the child back to Lancaster.

*Howland*, 289 A.3d 58 (unpublished memorandum at 3-4) (citation and brackets omitted). However, Howland denied having any form of sexual contact with the Victim. *See* N.T., 8/17/21, at 442, 446-47. Howland stated that he masturbated into a condom, while in the hotel bathroom. *See id*. at 441-42.

During closing arguments, Trial Counsel presented the following argument regarding the DNA analysis of the swabs from the Victim's genitals:

> We also heard there was DNA found inside [the Victim's] vagina. Yesterday that was brought back to the external genitalia. Now, when the . . . nurse testified, the external genitalia consisted of four swabs, two of the external lips and two of the areas going

> to the thigh. It never was clarified . . . which swab [Howland's] DNA was on. Was it the leg or the external lips?

N.T., 8/18/21, at 473-74. The prosecutor responded to Trial Counsel's argument as follows: "And the DNA analyst told you, yeah, [Howland's] DNA was on those external genitalia swabs. ***There were no thigh swabs***, these are external genitalia swabs." ***Id***. at 485 (emphasis added).

The jury convicted Howland of all charges. He filed notices of appeal, and this Court affirmed his judgments of sentence on November 9, 2022. ***See Howland***, 289 A.3d 58 (unpublished memorandum). He did not file petitions for allowance of appeal in our Supreme Court.

On January 23, 2023, Howland filed a timely *pro se* PCRA petition.[4] The PCRA court appointed Jonathan Chieppor, Esquire ("PCRA Counsel"), to represent Howland. On December 28, 2023, PCRA Counsel filed an amended petition, raising two claims that Trial Counsel was ineffective for: (1) not objecting or requesting a mistrial following the prosecutor's statement that Howland's DNA was present in the Victim's vagina; and (2) not calling a witness to testify as to Howland's character. On January 11, 2024, the PCRA

---

[4] Howland's judgments of sentence became final on December 9, 2022, the last day upon which he could have filed timely petitions for allowance of appeal with our Supreme Court. ***See*** 42 Pa.C.S.A. § 9545(b)(3) (providing that judgment of sentence becomes final under the PCRA at the conclusion of direction review "or at the expiration of time for seeking the review"); ***see also*** Pa.R.A.P. 1113(a) (providing that petition for allowance of appeal be filed within thirty days of judgment). As Howland filed his PCRA petition within one year of December 9, 2022, the petition was timely. ***See*** 42 Pa.C.S.A § 9545(b)(1) (providing that petitioner must file petition within one year of date judgment of sentence becomes final).

court scheduled a hearing and later rescheduled it to April 8, 2024. The court did not indicate the purpose of the hearing in its orders.

On March 23, 2024, PCRA Counsel filed a motion for a **Grazier**[5] hearing, averring that Howland "indicated his desire to proceed *pro se* in his PCRA claim." Motion to Request a **Grazier** Hearing, 3/23/24, at ¶ 5. The PCRA court conducted a **Grazier** hearing at the previously scheduled hearing. At the hearing, Howland indicated that he wished to remove PCRA Counsel, stating, "[I]f that means I have to go *pro se*, then I am prepared to do that." N.T., 4/8/24, at 2. Howland stated that the basis of his disagreement with PCRA Counsel was that counsel would not pursue "several issues" that Howland felt "need[ed] to be raised." **Id**. at 4; **see also id**. at 8-9 (PCRA Counsel stating that Howland wanted him to raise certain PCRA claims that PCRA Counsel determined to be "meritless . . . after research on the issues"). The PCRA court advised Howland that it did not provide petitioners "the option of going through a whole bunch of attorneys and decide who they are ultimately going to like. You get one shot, one bite at the apple[.]" **Id**. at 10. Howland indicated that he understood the court's statement. **See id**.

Following an oral colloquy and Howland's completion of a written colloquy form, the PCRA court granted Howland's request to proceed *pro se*.

---

[5] **See Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998) (holding that "[w]hen a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one").

*See id*.; *see also* Waiver of Right to Counsel Form, 4/8/24. The court also appointed PCRA Counsel as stand-by counsel and informed Howland that he had ninety days to file an amended *pro se* petition. *See* N.T., 4/8/24, at 9-10, 13.

The PCRA court then inquired whether there were further matters to address at the hearing. *See id*. at 10. The Commonwealth indicated that it felt there was no need for an evidentiary hearing on the two claims raised in PCRA Counsel's amended petition and it could not respond at that juncture to any additional claims Howland might raise in a forthcoming amended PCRA petition. *See id*. at 11. The court stated that it would determine whether to schedule a further hearing after review of the amended petition and the Commonwealth's answer. *See id*. at 13 (PCRA court stating, "Upon receipt of the various filings, the [c]ourt will schedule a further hearing at that point").

On August 16, 2023, after receiving an extension of time, Howland filed an amended *pro se* petition, raising twenty claims. The Commonwealth filed an answer. The PCRA court then filed a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition without a hearing. Howland filed a *pro se* response to the Rule 907 notice. On March 4, 2025, the PCRA court entered orders denying the petition. Howland filed timely notices of appeal. Both Howland and the PCRA court have complied with Pa.R.A.P. 1925.

Howland raised twenty-four issues in his Rule 1925(b) concise statement and presents the same twenty-four issues in this appeal. However, the PCRA court suggests that Howland has waived his "seventh through

twenty-fourth issues" — which correspond to his third through twentieth PCRA claims — because they "contained no discernable issues [Howland] wished to be reviewed on appeal." PCRA Court Opinion, 5/15/25, at 6-7 (unnumbered).

Rule 1925(b) provides that a concise statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). The note to the rule further states that a concise statement "should articulate specific errors with which the appellant takes issue and why." Pa.R.A.P. 1925, *note*. "[A] litigant appealing from the denial of PCRA relief is required to strictly comply with the provisions of Rule 1925(b), or his or her appellate issues are deemed to be waived." **Commonwealth v. Parrish**, 224 A.3d 682, 700 (Pa. 2020); **see also** Pa.R.A.P. 1925(b)(4)(vii) (stating that issues "not raised in accordance with the provisions of this paragraph (b)(4) are waived"). As our Supreme Court has explained, "a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." **Commonwealth v. Price**, 284 A.3d 165, 170 (Pa. 2022) (citation and brackets omitted).

The seventh through twenty-fourth issues of Howland's concise statement asserted that the PCRA court "erred in its ruling[s]" on his third through twentieth PCRA claims "without fully addressing all of the issues involved." **See** Rule 1925(b) Concise Statement, 4/25/25, at 4-9. However, Howland failed to identify any specific legal ruling on his eighteen ineffectiveness claims, nor did he explain why the court erred in its rulings.

- 9 -

*See* Pa.R.A.P. 1925(b)(4)(ii), *note*. As Howland's seventh through twenty-fourth issues were so vague that they "forced the PCRA court to guess which of its rulings were being challenged," we agree with the PCRA court that he has waived these issues. *Parrish*, 224 A.3d at 700.

Furthermore, we determine Howland has waived his seventh through twenty-fourth issues by failing to adequately develop them in his appellate brief. Our rules of appellate procedure require that the argument section of an appellant's brief "shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). In addition, the appellant's brief shall contain citations to the record and "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a), (c).

> Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him.

*Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) (citation omitted).

Here, in violation of our appellate rules, Howland grouped his seventh through twenty-fourth issues in one section of his brief, spanning a mere five and one-half pages. *See* Howland's Brief at 65-70; *see also* Pa.R.A.P. 2119(a). Furthermore, Howland merely listed the eighteen PCRA claims to which these appellate issues pertained and argued that the PCRA court erred in denying the claims, without any further elaboration. *See* Howland's Brief at 65-70. Howland failed to: identify the specific PCRA court rulings he was

- 10 -

challenging; explain why the rulings were in error; include any citations to the record; or include more than the most general citations to authority. **See id**. Therefore, even if Howland had not waived his seventh through twenty-fourth issues by his deficient concise statement, we would conclude that Howland waived these issues by failing to adequately develop them in a meaningful fashion capable of our review. **See Armolt**, 294 A.3d at 377; **see also** Pa.R.A.P. 2119(a), (c).

Accordingly, we address only the first six issues Howland presents in his brief:

I.    Was [Howland] prejudiced by being given a Hobson's choice to represent himself *pro se* during these PCRA proceedings, in order to have all of [Howland's] claims preserved for judicial review, or to proceed with the ineffective PCRA Counsel that was appointed to him, and thus not afforded effective assistance of counsel for his first PCRA appeal?

II.    Did the PCRA court err by reversing its own prior ruling to hold an evidentiary hearing on claims #1 and 8, of [Howland's] petition, without an explanation for its decision as to why it changed its mind on those two claims holding merit?

III.    Did the PCRA court err in its ruling that claim #1, of [Howland's] petition, is meritless and doesn't contain a genuine issue of material fact?

IV.    Did the PCRA court err in its ruling that claim #2, of [Howland's] petition, is meritless and doesn't contain a genuine issue of material fact?

V.    Did the PCRA court err by denying [Howland] an evidentiary hearing, as well as the ability to fully establish [Howland's] claims in his petition?

VI.    Did the PCRA court err by not granting [Howland] a new trial, or an evidentiary hearing, based on the cumulative

- 11 -

prejudice of Trial Counsel's ineffectiveness, established in [Howland's] petition?

Howland's Brief at 4-5 (unnecessary capitalization omitted and issues reordered for ease of disposition).

On appeal from the grant of PCRA relief, our review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Agnew*, 299 A.3d 1001, 1005 (Pa. Super. 2023) (citation omitted). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Id*. (citation omitted). We confine our review to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed below. *See Commonwealth v. Murchison*, 328 A.3d 5, 17 (Pa. 2024).

In his first issue, Howland argues that the PCRA court presented him with "the Hobson's choice" at the *Grazier* hearing "to either proceed *pro se* or [continue with appointed counsel and] waive eighteen of his twenty claims, all of which [Howland] felt had merit." Howland's Brief at 30 (unnecessary capitalization omitted). Howland further contends that "PCRA Counsel was ineffective due to his refusal to amend [Howland's] PCRA petition, as well as numerous other issues of PCRA Counsel's representation." *Id*. at 33 (unnecessary capitalization omitted).

Pursuant to Pa.R.Crim.P. 904, an indigent "petitioner has a rule-based right to the appointment of counsel for a first PCRA counsel."

*Commonwealth v. Bradley*, 261 A.3d 381, 391 (Pa. 2021). "The indigent petitioner's right to counsel must be honored regardless of the merits of his underlying claims, even where those claims were previously addressed on direct appeal, so long as the petition in question is his first." *Commonwealth v. Kelsey*, 206 A.3d 1135, 1139 (Pa. Super. 2019) (citation omitted).

In addition to the rule-based right to counsel, a PCRA petitioner also enjoys "the right to proceed without the assistance of counsel." *Grazier*, 713 A.2d at 82. Pursuant to *Grazier*, when a petitioner makes a "timely and unequivocal request to" proceed *pro se*, "an on-the-record determination should be made [by the PCRA court] that the waiver is a knowing, intelligent, and voluntary one." *Id*. "[W]ithout a colloquy the court cannot ascertain that the defendant fully understands the ramifications of a decision to proceed *pro se* and the pitfalls associated with his lack of legal training." *Commonwealth v. Robinson*, 970 A.2d 455, 460 (Pa. Super. 2009) (*en banc*).

Counsel appointed to represent an indigent PCRA petitioner has broad discretion in selecting the issues that he may present to the PCRA court. Thus, "after reviewing the certified record appointed counsel may . . . elect to raise additional issues beyond those which the petitioner raised in the initial *pro se* filing." *Commonwealth v. Mojica*, 242 A.3d 949, 954 (Pa. Super. 2020) (citation omitted). In addition, if counsel determines that there are no issues of merit after an independent review of the record, he may elect to withdraw under the procedure outlined in *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988)

(*en banc*). Once the PCRA court permits withdraw under ***Turner***/***Finley***, "new counsel shall not be appointed and the petitioner . . . must thereafter look to his or her own resources for whatever further proceedings there might be." ***Commonwealth v. Gibson***, 318 A.3d 927, 933 (Pa. Super. 2024) (citation omitted). Furthermore, "[w]hile an indigent is entitled to free counsel, he is not entitled to free counsel of his own choosing." ***Commonwealth v. Cook***, 952 A.2d 594, 617 (Pa. 2008) (citation omitted).

In ***Bradley***, our Supreme Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Bradley***, 261 A.3d at 401. This Court has subsequently clarified that, when a petitioner represents himself on appeal after his counsel's withdrawal pursuant to ***Turner***/***Finley***, the *pro se* petitioner must raise any PCRA counsel ineffectiveness claims in his Rule 1925(b) concise statement or waive any such claims. ***See Commonwealth v. Snyder***, 316 A.3d 178, 182 (Pa. Super. 2024) (holding that *pro se* petitioner failed to preserve PCRA counsel ineffectiveness claims when he did not include them in his court-ordered concise statement, "which would have been his first opportunity to raise his claims of PCRA counsel's ineffectiveness").

Howland asserts that he clearly informed the PCRA court at the ***Grazier*** hearing that the only reason he wanted to proceed *pro se* was PCRA Counsel's refusal to present numerous claims Howland sought to raise before the PCRA court. As Howland notes, PCRA Counsel confirmed that he believed many of

Howland's claims were non-meritorious and thus did not include them in his amended petition. Howland contends that he therefore "believed his only choice was to proceed *pro se* to protect his rights and preserve all of his claims for judicial review." Howland's Brief at 30. Howland asserts that he informed the PCRA court that PCRA Counsel's actions placed him in the position of waiving his right to counsel or abandoning the claims he wished to raise, yet the court refused to appoint new counsel to represent him. Howland argues that, because an indigent first-time petitioner has the right to counsel "regardless of the merits of his underlying claims," PCRA Counsel failed to fulfill his duties, leaving Holand "effectively uncounseled." **Id**. (citation omitted). For these reasons, Howland requests that this Court remand this matter to the PCRA court, "so that [Howland] can submit a counseled PCRA petition." **Id**. at 32 (unnecessary capitalization omitted).

Citing **Bradley**, Howland further avers that PCRA Counsel rendered ineffective assistance of counsel. Howland's primary ineffectiveness claim is that PCRA Counsel failed to include all his claims in the counseled amended petition, necessitating Howland to request to proceed *pro se*. In addition, Howland argues that PCRA Counsel was ineffective for: refusing to respond to Howland's letters requesting information; only having "four short phone calls" with Howland over a one-year period; providing Howland with an incorrect telephone number; refusing to explain why he believed Howland's issues lacked merit; not promptly informing Howland that a hearing was scheduled; communicating with Howland in a "rude and disrespectful" manner; delaying

- 15 -

the request for transcripts; failing to subpoena witnesses for the April 8, 2024 hearing; and failing to file his amended petition within the initial sixty-day deadline established by the PCRA court. *Id*. at 33-34.

The PCRA court noted that it conducted an on-the-record colloquy to ascertain that Howland's waiver of his right to counsel was knowing, intelligent, and voluntary. The court additionally observed that it instructed Howland that he did not have "the option of going through a whole bunch of attorneys" and PCRA Counsel was his "one bite at the apple." PCRA Court Opinion, 5/15/25, at 6 (*quoting* N.T., 4/8/24, at 10). The court determined that its "colloquy demonstrates that [Howland] was aware he was able to continue with court-appointed counsel, and that he made the decision to forego that representation due to irreconcilable differences in opinion." *Id*. The court thus concluded that it "did not err in allowing [Howland] to proceed *pro se*" in these PCRA proceedings. *Id*.

Based on our review, we discern no error in the PCRA court's decision to permit PCRA Counsel to withdraw and Howland to proceed *pro se*. **See Agnew**, 299 A.3d at 1005. Howland completed an oral and written colloquy at the **Grazier** hearing, and the PCRA court determined that he knowingly, intelligently, and voluntarily waived his right to counsel, a finding that Howland does not challenge in this appeal. Contrary to Howland's arguments, PCRA Counsel had no obligation to raise all of Howland's PCRA claims regardless of their merit. Rather, PCRA Counsel exercised the discretion afforded to him to independently review the record and only raise potentially

meritorious PCRA claims on Howland's behalf. *See Mojica*, 242 A.3d at 954; *see also Gibson*, 318 A.3d at 933. Furthermore, the PCRA court properly advised Howland of the "pitfalls" associated with his request to proceed *pro se* and that the court would not appoint additional counsel. *Robinson*, 970 A.2d at 460; *see also Cook*, 952 A.2d at 617; *Gibson*, 318 A.3d at 933. Therefore, we conclude that the PCRA court acted appropriately under the law and did not present Howland with an improper choice to either raise his desired claims or forgo appointed counsel.

We further determine that Howland has not demonstrated his entitlement to relief on his PCRA Counsel ineffectiveness claims. The holding of *Bradley* concerned claims brought by PCRA petitioners who are counseled at the time the PCRA court denies relief and then choose to obtain new counsel or proceed *pro se* and raise ineffectiveness claims against prior PCRA counsel. *See Bradley*, 261 A.3d at 401 (holding that a PCRA petitioner may raise a PCRA counsel ineffectiveness claim "*after* a PCRA court denies relief, and *after* obtaining new counsel or acting *pro se*") (emphasis added). By contrast, Howland elected to represent himself prior to the PCRA court's consideration of his claims, he filed an amended *pro se* petition, and the PCRA court denied relief on the amended *pro se* petition. Howland cites to no precedent allowing a *pro se* petitioner to raise ineffectiveness claims against the appointed counsel he successfully removed from his case prior to the filing of the *pro se* petition on which the PCRA court ultimately ruled. *Cf. Commonwealth v.*

*Fletcher*, 986 A.2d 759, 774 (Pa. 2009) (stating that the "law is clear that a defendant cannot allege his own ineffectiveness or that of standby counsel").

Even assuming Howland's PCRA counsel ineffectiveness claims are cognizable, we conclude that Howland failed to preserve these claims for our review.  Howland, at the latest, was required to raise his PCRA claims in his Rule 1925(b) concise statement or risk waiver of such claims.  *See Snyder*, 316 A.3d at 182.  Here, Howland did not include the claims in his amended *pro se* petition or his response to the PCRA court's Rule 907 notice, and his concise statement vaguely alleged that PCRA Counsel did "not afford[] effective assistance of counsel," without identifying in what specific respects PCRA Counsel was allegedly ineffective.  *See* Rule 1925(b) Concise Statement, 4/25/25, at 3.  Because Howland did not meaningfully articulate his PCRA Counsel ineffective assistance claims until he filed his brief in this Court, Howland has waived such claims.  *See* Pa.R.A.P. 1925(b)(4)(ii); *see also Parrish*, 224 A.3d at 700.  No relief is due on Howland's first issue.

In his second issue, Howland argues that the PCRA court erred by "reversing its own prior ruling" by not conducting an evidentiary hearing on his first and eighth PCRA claims — which correspond to the two issues PCRA Counsel raised in his amended petition[6] — after the court originally scheduled a hearing.  Howland's Brief at 25 (emphasis omitted).

_____

[6] As noted above, PCRA Counsel alleged in his amended petition that Trial Counsel was ineffective for: (1) not responding to the prosecutor's claim

*(Footnote Continued Next Page)*

"To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Brown***, 196 A.3d 130, 193 (Pa. 2018) (citation omitted). "It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019) (citation, brackets, and quotation marks omitted). An evidentiary hearing "is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." ***Brown***, 196 A.3d at 193 (citation omitted).

In support of his contention that the PCRA court originally intended to hold an evidentiary hearing on his first and eighth claims, Howland refers to the timing of the court's scheduling of the April 8, 2024 hearing. As Howland notes, after PCRA Counsel filed an amended petition in December 2023, the court entered an order on January 11, 2024 scheduling a hearing and then a subsequent order moving the date of the hearing to April 8, 2024. PCRA Counsel then filed the ***Grazier*** motion on March 23, 2024, and the PCRA court

---

that Howland's DNA was present in the Victim's vagina; and (2) not calling a character witness to testify in Howland's defense.

solely addressed the question of Howland's representation at the April 8, 2024 proceeding. Howland argues that it was "[t]herefore . . . very clear that this 'PCRA hearing' was to be an evidentiary hearing based on the two claims of PCRA Counsel's PCRA petition, as no other hearing was requested or needed" at that time. Howland's Brief at 26. Howland further asserts that his first and eighth *pro se* claims are "identical" to the two claims PCRA Counsel included in his amended petition, and Howland "even included additional details, arguments, and case law in support of the" claims. *Id*. at 25. Howland requests that this Court vacate the PCRA court's ruling and remand for an evidentiary hearing on the two claims.

In its opinion, the PCRA court explained that it was "unknown" why the court initially scheduled a hearing. PCRA Court Opinion, 5/15/25, at 4. The court stated that it conducted a *Grazier* hearing during the scheduled proceeding because Howland "felt there were irreconcilable issues with" PCRA Counsel. *Id*. The court noted that, after granting Howland's request to proceed *pro se*, it inquired, "What is counsel's understanding of what we would do beyond this today?" *Id*. (*quoting* N.T., 4/8/24, at 10). The court indicated that, although the Commonwealth represented that there was no merit to the claims in PCRA Counsel's amended petition, it "did not make any findings on the issues raised by" PCRA Counsel until it issued its Rule 907 notice. *Id*. The court therefore concluded that any argument by Howland that the court "'reversed [its] own prior ruling' [was] unfounded." *Id*.

Upon review, we conclude that Howland has not demonstrated any abuse of discretion by the PCRA court. **See Brown**, 196 A.3d at 193. As the PCRA court observed, there is nothing in the record to indicate that the court intended to hear evidence on PCRA Counsel's two claims at the April 8, 2024 hearing. The orders scheduling the hearing are silent on the purpose of the hearing, the court did not indicate at the hearing that it intended to hear evidence on the two claims, and neither party sought to introduce evidence at the hearing.

In any event, even if the PCRA court had initially scheduled an evidentiary hearing on the two claims, we are aware of no legal authority that compels a PCRA court to conduct a scheduled evidentiary hearing if it determines upon further reflection that there is no merit to any of the claims. A PCRA petitioner does not possess an "absolute right" to an evidentiary hearing, and the court may decline to hold a hearing where no genuine issue of fact exists. **Maddrey**, 205 A.3d at 328 (citation omitted). The PCRA court determined that there was no genuine merit to any of Howland's claims in its Rule 907 notice and then dismissed the petition without a hearing. Accordingly, Howland's second claim merits no relief.

In his next three issues, Howland challenges the PCRA court's dismissal of his first and second claims without a hearing. These two claims raised Trial Counsel's ineffectiveness with regard to multiple instances of alleged

prosecutorial misconduct in the Commonwealth's opening statement and closing argument.[7]

In assessing ineffective assistance of counsel claims under the PCRA, we presume that counsel has rendered effective assistance. **See Commonwealth v. Washington**, 269 A.3d 1255, 1263 (Pa. Super. 2022) (*en banc*). To overcome the presumption, the petitioner must show that: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id**. (citation omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. **See id**.

_____

[7] Howland's third and fourth issues concern the dismissal of his first and second claims. He presents a further standalone fifth issue challenging the PCRA court's decision to not hold a hearing on any of his claims, including his eighteen waived claims. We address Howland's fifth issue in the context of his first and second claims.

Nevertheless, we note that Howland merely argues that he satisfactorily pleaded his ineffectiveness claims and cites the general rule that the PCRA court shall order a hearing when a petition raises material issues of fact. **See** Howland's Brief at 19-24. As discussed **infra**, we conclude that the record supports the PCRA court's conclusion that there was no genuine issue of fact necessitating a hearing on Howland's first and second claims. Furthermore, Howland "does not specify within" his fifth issue "a single material fact that in his view was raised by his petition and warrants a hearing." **Commonwealth v. Hutchinson**, 25 A.3d 277, 320 (Pa. 2011). Thus, Howland's "non-specific assertions of PCRA court error for failure to hold a hearing do not entitle him to relief." **Id**.

- 22 -

This Court has observed:

> [I]t is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Commonwealth v. Rodriguez*, 340 A.3d 334, 341 (Pa. Super. 2025) (citation omitted). Furthermore, "[i]t is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016).

In his third issue, Howland challenges Trial Counsel's response to two sets of alleged misstatements by the prosecutor regarding the presence of his DNA on samples collected from the Victim. First, Howland argues that the prosecutor twice erroneously stated in her opening statement that the DNA analysis would show that Howland's DNA was present "inside the vagina of" the Victim. N.T., 8/16/21, at 58; *see also id*. at 61-62 (prosecutor stating

that Howland's "DNA is inside that child's vagina"). Howland asserts that the Commonwealth's DNA expert contradicted these statements as her analysis showed only a "single source" of DNA from the vaginal swabs, the Victim. N.T., 8/17/21, at 351-52, 360.

Second, Howland contends that the prosecutor misstated in her closing argument that "[t]here were no thigh swabs, these are external genitalia swabs." N.T., 8/18/21, at 485. Howland acknowledges that the prosecutor's statement was in response to Trial Counsel's argument that the external genital swabs were from "the areas going to the thigh" and "[i]t was never clarified" whether Howland's Y chromosome DNA was found on "the leg or the external lips." *Id*. at 473-74. Howland contends that the nurse refuted the prosecutor's claim that "[t]here were no thigh swabs," as the nurse testified that the external genital swab went "from labia to inner thighs." *Id*. at 485; *see also* N.T., 8/17/21, at 321.

Howland argues that these "patently false" misrepresentations constituted "clear prosecutorial misconduct" as they were not based on the evidence or reasonable inferences therefrom. Howland's Brief at 37, 43. Howland avers that Trial Counsel should have known the status of the DNA evidence, since the Commonwealth produced the DNA expert report in advance of trial. Howland contends that, in response to these misstatements, Trial Counsel should have raised an objection, requested a curative instruction, moved for a mistrial, or included the issue in his post-sentence motion.

Howland contends that Trial Counsel had no reasonable basis or legal strategy for failing to raise the issue and protect Howland from the misuse of the DNA evidence. Howland reasons that "[a]ny reasonable attorney, who was well enough prepared, would[ have] noticed such a blatant misstatement of a material fact, and addressed it." *Id*. at 41.

Howland also asserts that he suffered prejudice from the misstatements regarding the DNA evidence, as "they were an extraneous influence on the jury, fraud on the part of the Commonwealth, and [raised] a distinct and unnecessary appearance of unfairness and impropriety." *Id*. at 38. Howland emphasizes that DNA evidence was "a central issue to the case" and "the prosecutor's most powerful weapon." *Id*. (citation omitted). Howland notes that penetration of the Victim's genitals was an essential element of several of his convictions,[8] and evidence of DNA inside or near the Victim's genitals corroborated the Victim's testimony that penetration occurred. Howland contends that the prosecutor's misrepresentations had particular force because the "[V]ictim changed [his] story several times" during the case. *Id*. at 41. Howland further emphasizes that the prosecutor's erroneous

---

[8] **See** 18 Pa.C.S.A. § 3101 (defining "sexual intercourse" for purpose of statutory sexual assault to require intercourse with its "ordinary meaning" as well as "intercourse per os or per anus, with some penetration however slight"); **see also id**. (defining "deviate sexual intercourse" for purpose of IDSI to include "[s]exual intercourse per os or per anus"); 18 Pa.C.S.A. § 3125(a) (providing as an element of aggravated indecent assault that the accused engages in "penetration, however slight, of the genitals or anus of a complainant with a part of the [accused's] body").

statements obscured the inconclusiveness of the DNA evidence, as the condom was subject to potential cross-contamination from the trash bag in which it was found and the Y chromosome DNA analysis only narrowed the results down to one in 9,742 individuals.

The PCRA court addressed Howland's first and second PCRA claims together, noting that the trial court instructed the jury, prior to the opening statements and closing arguments, that counsel's arguments were not evidence. *See* Rule 907 Notice, 2/4/25, at 5-6; *see also* PCRA Court Opinion, 5/15/25, at 6 (relying on the substantive analysis with respect to first and second claims in Rule 907 notice). In light of these instructions, the PCRA court concluded that Howland did not establish "that the comments made by the Commonwealth severely prejudiced the jury in that they were unable to render a fair and objective verdict." Rule 907 Notice, 2/4/25, at 6. The court reasoned that the "jury presumably followed the [trial c]ourt's instructions closely when being read the instructions, when it deliberated, and when it ultimately rendered a verdict of guilty." *Id*.

After careful review, we conclude that the record supports the dismissal of Howland's first claim. *See Agnew*, 299 A.3d at 1005. First, with respect to his claim concerning the prosecutor's statement that Howland's DNA was present inside the Victim's vagina, Trial Counsel did respond to this comment, albeit not directly after the opening statements. As Howland notes, the Commonwealth's DNA expert testified clearly both on direct and cross-examination that Howland's DNA was not present on the vaginal swab. *See*

N.T., 8/17/21, at 351-52, 360. In his closing argument, Trial Counsel pointed out that the prosecutor's claim that DNA would be found in the Victim's vagina was mistaken. N.T, 8/18/21, at 473 (Trial Counsel noting, among several inconsistencies between the Commonwealth's opening statement and trial evidence, that the jury heard "there was DNA found inside [the Victim's] vagina," but "[y]esterday that was brought back to the external genitalia").

Furthermore, the trial court instructed the jury before the opening statements and before and after closing arguments that the arguments by counsel were not evidence and the jury alone decided the case based on the evidence presented.[9] We presume that the jury followed these instructions. **See Cash**, 137 A.3d at 1280. We note that there was substantial additional evidence that the Victim and Howland had vaginal intercourse, including the Victim's testimony, his statements to the nurse, and the evidence of the Victim's DNA on the outside of the condom and Howland's sperm on the inside and outside of the condom. **See** N.T., 8/17/21, at 202-03, 317-18, 353-56; **see also Commonwealth v. Castelhun**, 889 A.2d 1228, 1232 (Pa. Super.

_____

[9] Before trial, the trial court instructed the jury that the "opening statements do not constitute evidence and they are not to be considered as established facts." N.T., 8/16/21, at 48; **see also id**. at 40. Prior to closing arguments, the trial court informed the jury that they were "not bound by the recollection of counsel," and it would be the jury's "recollection and [theirs] alone which will govern [the jury] in [their] deliberations." N.T., 8/18/21, at 467. In the final charge, the court reiterated that: "[s]peeches of counsel are not part of the evidence and [the jury] should not consider them as such;" the jury was "not required to accept the arguments of either lawyer;" and it "is for [the jury] alone to decide this case based on the evidence as it was presented." **Id**. at 507.

2005) (noting that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses"). In light of this additional evidence of the sexual contact, the trial court's clear instructions regarding counsel's arguments, and Trial Counsel's correction of the record in his closing statement, the record supports the PCRA court's finding that Howland did not establish a reasonable probability that the outcome of the proceedings would have been different if Trial Counsel had objected or moved for a mistrial after the opening statement. *See Washington*, 269 A.3d at 1263.

Second, the record fails to show arguable merit to Howland's claim that Trial Counsel was ineffective for failing to respond to the prosecutor's argument that "[t]here were no thigh swabs, these are external genitalia swabs." N.T., 8/18/21, at 485. The nurse testified that the external genital swab was of the area "from labia **to inner thighs**," and she did not state that the swab covered any portion of the thigh. N.T., 8/17/21, at 321. Moreover, the prosecutor's comment was in direct response to Trial Counsel's argument that "[i]t never was clarified" whether Howland's DNA was found on "the leg or the external lips." N.T., 8/18/21, at 473-74. Therefore, the prosecutor's comment was a fair response to Trial Counsel's argument regarding a contested interpretation of the evidence at trial. *See Rodriguez*, 340 A.3d at 341. No relief is due on Howland's third claim.

In his fourth issue, Howland argues that the PCRA court erred in dismissing his second claim without a hearing. Howland's second claim

concerned a multitude of additional allegedly improper comments by the prosecutor during opening statements and closing arguments. Howland specifically alleges that the prosecutor:

(1)     misrepresented the facts of the case by stating: Howland first interacted with the Victim online in "the summer of 2020" when they in fact met much later; Howland "used cash the entire way back to Pennsylvania" when no proof was offered to substantiate this; and Howland "touched [the Victim's] breasts with his hands and his mouth" when the Victim never indicated what body part Howland used to touch him;[10]

(2)     misrepresented testimony of the Commonwealth's expert on victim behavior and trauma response by stating that the Victim engaged in sexual communication and conduct because he was "getting positive attention from" Howland;[11]

(3)     inserted her own opinion and used hyperbole when arguing: Howland was "literally every parent's worst nightmare;" he "made that child his personal sex toy;" Howland's actions were "heinous," and he "preyed" on the Victim; Howland viewed photographs of the Victim and other naked minors for "his own sexual desires;" and Howland's "callous attitude [and] predatory behaviors [were] chilling;"[12]

(4)     implied that Howland would and did lie during his testimony by: arguing "[m]aybe [Howland will] just try to distract [the jury] from the facts;" asking the jurors to think about who had the "motive to lie;" stating the social media messages between Howland and the Victim had "no reason to lie" and corroborated the Victim's testimony; arguing that Howland "would have to be unluckiest person on the planet . . . for his story" of how the Victim's DNA ended up on the condom "to be even remotely plausible;" stating Howland "want[ed the jury] to believe none of this happened;" arguing

---

[10] **See** N.T., 8/16/21, at 49, 51; N.T., 8/18/21, at 479.

[11] **See** N.T., 8/18/21, at 484.

[12] **See** N.T., 8/16/21, at 49; N.T., 8/18/21, at 476, 485, 487, 491-92, 495.

Howland was trying to create "imaginary doubt" that was "unreasonable" and "nearly offensive;" and stating that the jury would have to "buy his story" to find him not guilty;[13]

(5) explained the legal concepts of consent, burden of proof, and reasonable doubt and the statutory elements of the charges to the jury;[14]

(6) appealed to the jury for sympathy by stating that there would be "lifetime ramifications" for the Victim's family and it was not "logical" to "requir[e] children to tell the same exact story . . . every single time;"[15] and

(7) attempted to manipulate the jury by arguing that she "hope[d it is] not the society we live in" where an adult stranger can take a thirteen-year-old child from his home because the child complained about the strictness of his parents and expressed suicidal thoughts.[16]

Howland contends that "all of these statements were improper as they constitute[d] blatant prosecutorial misconduct, were an extraneous influence on the jury, easily inflamed the prejudices of the jury, and were designed to fix in the minds of the jury bias and hostility towards" Howland. Howland's Brief at 60. Howland asserts that Trial Counsel was ineffective for not objecting, moving for a mistrial, requesting a curative instruction, or raising an issue in his post-sentence motion relating to each of the prosecutor's comments. Howland contends that the trial court's general instruction that counsel's arguments were not evidence was insufficient and only specific

_____

[13] **See** N.T., 8/16/21, at 61; N.T., 8/18/21, at 477, 479-80, 486, 494-95.

[14] **See** N.T., 8/16/21, at 57-61.

[15] **See** N.T., 8/18/21, at 484, 495.

[16] **See** N.T., 8/18/21, at 490-91.

instructions related to each of the above statements would have sufficed. Howland therefore requests that this Court either order a new trial or remand for an evidentiary hearing on this claim.

Based on our review, we determine that the record supports the PCRA court's dismissal of Howland's second claim without a hearing. *See Agnew*, 299 A.3d at 1005. With regard to the prosecutor's alleged misrepresentations, Trial Counsel did respond to the prosecutor's statement that Howland met the Victim online in "the summer of 2020," as counsel clarified in his opening that the evidence would show "they first connected not months ago as you heard, but at the end of October of 2020." N.T., 8/16/21, at 49, 64. The prosecutor's comment that Howland "used cash the entire way back to Pennsylvania" found support in testimony that police found Howland with a large amount of cash in the hotel room and Howland's admission that he regularly used cash because of his business. N.T., 8/16/21, at 51; *see also* N.T., 8/17/21, at 286, 390, 440. It was at most ambiguous whether Howland "touched [the Victim's] breasts with his hands and his mouth," as the prosecutor claimed, since the Victim only stated that Howland kissed his neck and did not indicate in what manner Howland touched the Victim's breasts. N.T., 8/18/21, at 479; *see also* N.T., 8/17/21, at 203-04, 273-74. In any event, Howland failed to establish prejudice with respect to this claim as we presume the jury followed the trial court's instruction that counsel's arguments did not constitute evidence. *See Cash*, 137 A.3d at 1280; *see also Washington*, 269 A.3d at 1263. Finally, the prosecutor's argument that the Victim engaged in sexual

conduct based on the "positive attention from" Howland was a fair inference from the Commonwealth's victim behavior expert's testimony. Specifically, the expert testified that a child is more likely to engage in abusive relationships with adults who give gifts or "promise [the child] something better." N.T., 8/18/21, at 484; **see also** N.T., 8/17/21, at 248-51.

Concerning the remainder of the challenged statements, Howland has not demonstrated any arguable merit to these claims. Our review reveals that the prosecutor's comments were within the bounds of permissible oratorical flair, fair response to Trial Counsel's argument, and based on reasonable inferences derived from the evidence at trial. **See Rodriguez**, 340 A.3d at 341. Furthermore, Howland did not demonstrate that the prosecutor misstated any legal concepts to the jury. **See Commonwealth v. Rios**, 684 A.2d 1025, 1034 (Pa. 1996) (rejecting ineffectiveness claim where petitioner did not show prosecutor misstated law to jury and explaining, "There is no prohibition against a prosecutor discussing applicable law in his closing argument, as long as he states the law clearly and accurately"). Accordingly, Howland's fourth claim merits no relief.

In his final issue, Howland contends that the PCRA court erred by not granting him a new trial or an evidentiary hearing based on the cumulative prejudice of his PCRA claims. Howland asserts that the PCRA court specifically found with respect to his first and second claims that he did not prove that

"the comments made by the Commonwealth severely prejudiced the jury."[17] Howland's Brief at 27 (*citing* Rule 907 Notice, 2/4/25, at 6) (emphasis omitted). Howland therefore asserts that, where "the PCRA court[ found] that all of [Howland's] claims fail at the prejudice prong, their cumulative prejudice can be evaluated." *Id*. at 28 (unnecessary capitalization omitted).

Our Supreme Court has held that in general "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Elliott**, 80 A.3d 415, 450 (Pa. 2013). However, when multiple ineffective assistance claims failed based upon a finding of a lack of prejudice, "then the cumulative prejudice from those individual claims may properly be assessed." **Id.** The Court has cautioned that "nothing in our precedent relieves an appellant who claims cumulative prejudice from setting forth a specific, reasoned, and legally and factually supported argument for the claim." **Commonwealth v. Hutchinson**, 25 A.3d 277, 319 (Pa. 2011). "A bald averment of cumulative prejudice does not constitute a claim." **Id.**

Here, Howland presents nothing more than a "bald averment of cumulative prejudice," and fails to advance "a specific, reasoned, and legally

---

[17] Howland also argues that the PCRA court found that he failed to demonstrate prejudice with respect to his third through twentieth claims. **See** Howland's Brief at 27-28. As we have determined that he waived any challenge with respect to the PCRA court's dismissal of these eighteen claims, **see supra**, we do not address any contention with respect to the cumulative prejudice of these claims here.

and factually supported argument for" his claim. ***Id***. Accordingly, we decline Howland's invitation to undertake a cumulative prejudice analysis of his claims.

For the foregoing reasons, we conclude that the record supports the dismissal of Howland's amended *pro se* PCRA petition without a hearing. We therefore affirm the orders dismissing his petition.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/02/2025